Moncure, P.,
delivered the opinion of the court. After stating the case, he proceeded :
One of the objections, made to the specific execution of the contract in this case, and the one which seems to have been most relied on in the answer, and in the petition for an appeal to the District court, was, that the consideration was agreed to be paid in Confederate money, the passing and receiving of which is, and was, at the time the contract was made, (the 14th of August 1863), a highly penal crime,- and the contract was therefore illegal and void. In the argument of the case before this court, no reliance was placed on this ground, which was not even alluded to, by the counsel for the appellant; *78 for the very good reason, that since it was taken, the course °f adjudication, if not of legislation, also, has shown it to be unsustainable.
. In the petition for an appeal to the District court ip¡s caSg5 the learned counsel who drew it, remarked: “It might be curious to think how the Supreme court of the Uuited States would regard this case, if it should, as it may go before them.” And yet it has curiously happened, that since that petition was drawn, a case very much like this, involving the question of the legality of such contracts, has gone to the Supreme court, which fully sustained their legality. In Thorington v. Smith, 8 Wall. U. S. R. 1, decided by that court in December 1868, it was held, according to the reporter’s marginal abstract of the case, that “a contract for the payment of Confederate States treasury notes, made between parties residing within the so-called Confederate States, can be enforced in the courts of the United States, the contract having been made on a sale of property, in the usual course of business, and not for the purpose of giving currency to the notes, or otherwise aiding the rebellion.” If such a contract can be enforced in the courts of the United Siates, a fortiori, it may be enforced in the courts of a State which was one of the Confederate States. After this decision, and without referingto the course of legislation and adjudication in this State, the question as to the legality of such a contract, may be considered as settled.
Another objection was much relied on in the said petition, but not alluded to in the argument of the appellant’s counsel in this court; and that is, that the agreements and receipts filed as exhibits with the bill, are null and invalid for want of being properly stamped, and ought not to have been used or considered for any pui’pose in the cause. All, or nearly all of these instruments appear to have been actually stamped. But the objection seems to be, or rather to have been, that they- *79 were not “duly stamped;” that is, not by the pi’oper person and at the proper time. How it happens, in regard to this question also, that the Supreme court of the United States has recently decided, that “ the omission of -a stamp does not invalidate an instrument, unless the omission was with fraudulent intent. Such omission, if fraudulent, cannot be taken advantage of on demurrer; it must be set up by a special plea, or urged at the trial.” Campbell v. Wilcox, decided atDecember term 1870, and reported in the “Law Times, U. S. court’s reports,” vol. 4, p. 67. If there was an omission in this case, it was obviously not with a fraudulent intent. Uor was the objection set up by special plea, or even in the answer, which refers to the bill and exhibits filed therewith for proof that the contract is as stated in the answer. But it appears to have been recently held in several cases, that the provision of the act of congress of 30th June 1864, declaring that no instrument required bylaw to be stamped shall be admitted or used as evidence in any court without being legally stamped, does not include the State courts ; and that congress has no power to establish rules of evidence for the State courts. 2 Brightley’s Dig., p. 375, note (a), referring to Carpenter v. Snelling, 97 Mas. R. 452; Hallock v. Jaudin, 34 Calif. R. 167; Beebe v. Hutton, 47 Barb. R. 187; Howe v. Carpenter, 53 Id. 382, and other cases. This objection in regard to stamps is therefore unfounded.
But the defence mainly, if not now exclusively, relied on in this case is, that the question whether there should be a decree for the specific performance of a contract, is one which addresses itself to the sound discretion of a court of chancery under all the circumstances of the case, and that in the exercise of such a discretion no such decree ought to he made in this case. It is true that the specific performance of contracts, in a general sense, is, as has been said, not a matter of right in either party, but a matter of discretion in the court; not, indeed, of *80 -arbitrary or capricious discretion, dependent upon the mere pleasure of tbe judge, but of .that sound and reasonal;>le discretion which governs itself, as far as it may, by general rules and principles; but, at the same which withholds or grants relief according to the’ circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties. 2 Story’s Eq., § 742. But this whole subject is so fully considered in the able opinion delivered by my brother Christian in this court a few days ago, in the case of McComas v.' Easly, that nothing more need here be said about it. I will,- however, repeat this much, that “where, indeed, a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it, as it is for a court of law to give damages for the breach of it.” 2 Story’s Eq., § 751. This proposition is self-evident. The law always enforces the contracts of men where they are unobjectionable. The literal and exact enforcement of a contract requires its specific execution, whatever may be the subject of such contracts. Generally, specific execution of a contract in regard to personalty will not be decreed, but the parties will be turned over to their legal remedies, because they are more convenient than equitable remedies, and damages, generally, afford ample and- satisfactory compensation. "When personal property has a peculiar value, a legal remedy is provided for its recovery; and, if necessary, resort may be had to a court of chancery for its recovery- on that very ground. But land always has, in the eye of the law, a peculiar value, and a contract for the sale and purchase of it, if unobjectionable, will therefore be specifically executed. In no other way can the parties receive the full benefit of their contract. And no court, having jurisdiction of the subject, and being properly applied, to for such relief, can withhold it, but by an act of arbitrary power.
*81 Then the question in this case resolves itself into this, whether the contract here, in its nature and circumstances, is unobjectionable ?
The only objection made to it is, that the price agreed to be paid, and actually paid, for the land, was an inadequate consideration therefor, and therefore the court should refuse to compel the vendor to convey the land to the vendee.
It is admitted that inadequacy of consideration is always a material circumstance to be considered, along with other circumstances existing in a case, conducing to show that it would be inequitable to enforce the specific execution of a contract.
And it is also, admitted, that where there are no such other circumstances, but the inadequacy of consideration is such as to shock the moral sense of mankind, it is in itself evidence of fraud, and sufficient to prevent the specific execution of the contract.
But here the inadequacy of the consideration, if it be inadequate in the sense in which we are now considering it, stands solitary and alone, as the ground on which relief is claimed from the obligation to perform the contract. It is not pretended that any fiduciary relation existed between the contracting parties at the time of the contract, or at any other time. It is not pretended that any fraud or influence, undue or otherwise, was practiced by the vendee on the vendor to induce him to enter into the contract: It is not pretended that it was made under any misrepresentation or mistake. It is not pretended that the vendor was not a man of perfectly sane mind¿ capable of making contracts, and taking good care of his own. interest. It was said in argument by the counsel of the vendee, that the vendor is a man remarkable for his experience in and capacity for business. Of course that is not in the record, and cannot be regarded by the court. But there is not a particle of evidence in the record tending to show the contrary, which doubtless *82 would have been, shown, if the contrary had been the -fr10*-' leas^ we may say that any circumstance what- • ever, which would have afforded the least aid to the ground relied oil of supposed inadequacy of considerawoul¿ have been proved if it had existed. It must therefore be taken, that the supposed inadequacy of consideration stands alone as the ground relied on. And the question now is, whether it be, of itself, a sufficient ground.
That it is not of itself a sufficient ground for setting aside a contract, unless the inadequacy be so great as to shock the moral sense, and thus be proof of actual fraud, seems to be well settled.
But it seems to be supposed that there is a difference in this respect between a suit to set aside and a suit to enforce the specific performance of a contract. And no dou> t a court will often refuse to set aside, where it would also refuse to execute, a contract. But I think it will be found that in most, if not all the cases, in which the court has refused to enforce the specific performance •of a contract, on the ground of inadequacy of consideration, there has been some other circumstance.in connection with it which would have made it inequitable and unconscionable to make such a decree.
The case of Seymour v. Delancey, &c., 6 John. Ch. R. 222, is a leading case of that kind. In that case there were certainly many and strong circumstances, in addition to that of inadequacy of consideration, tending to show that it would not have been proper to decree the specific performance of the contract. The learned Chancellor Kent commences his opinion by saying : “ The question in this case is, whether it be fit and proper, under all the circumstances, to decree a specific performance of the contract of sale. To be sure, he then says that “ the main objection to the exercise of this power of the court in the present case, is the great inadequacy of price which the plaintiff was to allow for the two *83 farms, of which, he seeks title.” But on pages 232 and 233, he details the additional circumstauces which induced him to refuse to make the decree sought for.
In that ease, it is true, the chancellor expresses the opinion that mere inadequacy of price, though not itself sufficient to set aside a sale of land, yet is sufficient to induce the court to refuse to decree a specific performance of a contract of such a sale. But the decision in that case was reversed on appeal. Same case, 3 Cow. R. 445; to which book, however, I have not now access.
There are other cases on the same subject, but I deem it unnecessary to refer to them in detail, especially as I have not access to all of them. Most of those which had occurred when Seymour v. Delancey was decided by Chancellor Kent in 1822, are reviewed in his opinion in that case.
In Fry on Specific Performance, second American edition, chapter 7, under the head “ of inadequacy of the consideration, embracing §§ 275-285, the author reviews the principal English cases which had been decided at the time of the publication of his work ; and the American editor refers to those since decided, and the principal American cases down to 1861, the date of that .edition. In this summary, may no doubt be found as correct an exposition of the law on the subject as anywhere else.
The author commences the chapter by saying: “ We now proceed to enquire how far the inadequacy of the consideration for a contract may furnish a defence against its specific performance. § 275. Further on he says : “ There is no doubt that inadequacy of consideration, when combined with any case of fraud, misrepresentation, studied suppression of the true value of the property, or with any circumstances of oppression or even of ignorance, is a most material ingredient in the case, as affecting the discretion of the court in granting specific performance ; and further, it may materially concur in constituting a case for setting aside a transaction.55 *84 § 277. After referring to several cases of that class, he saIs • “ The question, however, which hasheen principally is the effect on contracts of the inadequacy of consideration, taken hy itself and abstracted from all otjier cireumstances.” § 278. “ "With regard to it as a ground for the setting aside of transactions, the doctrine of the court is, that inadequacy of consideration, if only amounting to hardship, or even great hardship, is no ground for relieving a man ‘ from a contract which he has wittingly and willingly entered into but that it may be so enormously great as to be a conclusive evidence of fraud, and that it is then a ground for setting aside the transaction affected by it.” § 279. “Regarded as a ground of defence to a specific performance, the doctrine of the older cases was, that it was sufficient, it being regarded, even whore not amounting to evidence of fraud, as a circumstance of hardship which would stay the interposition of the court.” § 280. After stating some of the older cases, the author thus concludes : “Rut it seems now to be established by the decisions of Lord Eldon and Sir William Grant, that mere inadequacy of considration is no defence to specific performance, unless it amount to an evidence of fraud, and so would furnish a ground even for cancelling the contract. (Per Lord Eldon in Stilwell v. Wilkins, Jac. R. 282.) ‘Unless the inadequacy of price,’ said Lord Eldon in one case, (Coles v. Trecothick, 9 Ves. R. 234, 246), ‘ is such as shocks the conscience and amounts in itself to conclusive and decisive evidence of fraud in the transaction, it is not itself a sufficient ground for refusing a specific performance.’ ” There can now, I suppose, be no doubt as to what it the English law on the subject, and that it conforms to the decision of those two great chancery lawyers, Lord Eldon and Sir William Grant. In the American cases, there seems to be .some conflict; but as I have before remarked, it will perhaps be found, that in most of the cases in which inadequacy of consideration has been said *85 to be a sufficient ground of itself to prevent a decree for specific execution, some additional circumstance existed for refusing such specific execution. The cases may be seen by reference to the notes of the American editor to chap. 7 of Fry on Specific Performance, and the'notes Hare and "Wallace to Woolam v. Hearn, 2 leading cases in equity, edition of 1859, pp. 404, 696 and 697. In this State, we have no case directly on the subject. The case of Cribbins v. Markwood, 13 Gratt. 495, which was a unanimous decision of this court, perhaps serves to show the inclination of the mind of the court. In that case it was held: 1st, that a sale of a reversion in real estate by a young man who had just arrived at the age of twenty-one years, there having been no fraud or imposition on the part of the purchaser, and no confidendential relation between the parties, will not be set aside for mere inadequacy of price ; and 2dly, that the English doctrine in relation to the sale of expectant interests, so far as it relates to vested “ interests, is not law in this State.” Judge Allen, in delivering the opinion of the court in that case cites, with approbation, the case of Griffith v. Spratley, 1 Cox’s Ca. 384, in which Lord Ch. B. Eyre uses this strong lauguage: “ The value of a thing is what it will produce, and admits of no precise standard. It must be in its nature fluctuating, and will depend upon ten thousand different circumstances. One man in the disposal of his property, may sell it for less than another would. He may sell it under a pressure of circumstances, which may induce him to sell it at a particular time. How, if courts of equity are to unravel all these transactions, they would throw everything into confusion, and set afloat all the contracts of mankind. Therefore, I never can agree that inadequacy of consideration is, in itself, a principle upon which a party may be relieved from a contract which he has wittingly and willingly entered into. It may indeed be a strong evidence of fraud, &c. When you see distress on the one *86 side and money on the other, and a wish on the one side • Press that distress into submission to its terms, inadequacy of price goes a great way in warranting the court to infer from this, that some sort of fraud was used to draw the other party into the bargain.”
The English doctrine in regard to the sale of expectant interests which was overruled, in part at least, by the case of Cribbins v. Markwood, in this State, is thus stated in Ery on Specific Performance, § 270: “The court, considering that a man possessed only of a future interest, sells at a disadvantage, has always refused specific performance of contracts by heirs for the sale of such estates, at an under value; and moreover, has throwm the onus of proving that the transaction was for a full consideration, and in all respects fair, on the purchaser asking for the assitance of the court.” See also Id. § 285.
Now, Cribbins v. Markwood was a case in which the rescisión of a contract was the object of the suit, and we do not know what would have been the decision of the court, if specific performance had been the object. But I think we may fairly infer that the court would have decreed such specific performance. At all events, I think we may fairly infer, that if the case had been one to which the doctrine established by the decisions of Lord Eldon and Sir William Grant, as aforesaid, would have been applicable in England, this court would have applied • that doctrine to the case.
Having said thus much, and perhaps too much, in regard to the law which seems to have a bearing upon this case, I will now enquire as to the facts of the case, and see.hdw the law applies to them.
I have already endeavored to show, that even if the consideration of the contract can be considered as inadequate, within the meaning of the doctrine we have been considering, yet such inadequency is not, of itself, a sufficient ground for refusing to decree the specific performance of the contract.
*87 But I think it cannot he predicated of such consideration, that it was inadequate, within the meaning of that doctrine, and I am of opinion that no ease which has been cited, or can be shown, would warrant the court in refusing to decree the specific performance of the tract in this case.
To determine whether the consideration was adequate,. and whether the court can now refuse to decree specific performance of the contract on the ground of inadequacy of consideration, we must carry ourselves back to; the date of the contract, and the time when the purchase money was paid. If, at that time, the consideration, would have been deemed adeqúate ; if the court would ■ then have decreed a specific execution of the contract, ‘ had this suit then been brought, it follows, I thiuk,, necessarily, that the consideration must now be deemed adequate, and the court must now decree such specific execution. Gan there be a doubt, that if this suit had then been brought, the consideration would then have, been considered adequate, and the court would then have decreed specific execution ? I think none what-> ever. Here is a case in which parties, sui juris, per-; fectly competent to make a contract, fairly enter into-one with each other for the sale and purchase of a tract, of laud, at a price agreed upon between them, payable’in Confederate money, the only currency of the country, at the time, and for a long time before and afterwards ; and the purchase money is fully paid. Had not the: vendee, then, a right to have the title to the land ? Could the vendor, then, have lawfully withheld the title ? Would not a court of equity, then, have compelled the. vendor to convey the title to the vendee ? Why not ?: Was not the money for which the parties contracted, and which "was received in payment, lawful money ?; Even the Supreme court of the Hnited States, we have seen, has decided that it was, for all the purposes of money, in the business transactions of the country. It *88 was the only currency of the country, without the use of which no business of any kind could be carried on. Was not the consideration adequate? Who are the proper judges of that, the parties or the court? Certhe parties, supposing them to have been competent to make a contract, as they were ; and, supposing the contract to have been fairly made, as it was. But there is not a particle of evidence in the cause to show that the consideration was not adequate; that ten thousand dollars in Confederate money was not fully as much as the land would bring in the market, and as the land was worth. The best criterion, ordinarily, of the value of land is what it will bring in the market. ■ There is evidence tending to show that the land was worth $6,000 in gold. But the sale was not made for gold, and could not then have been made for gold. Certainly could not have been made for anything like as much as $6,000 in gold. It was sold for Confederate money, and could only have been sold for that kind of money, being then the only currency of the country. Confederate money had a purchasing power, in regard to land and other property, which made it worth much more than its market value in gold with the brokers. As was said arguendo in Thorington v. Smith, supra: ‘■‘While it was 20, 30, or 40, to 1, these treasury notes had an exchangeable power of 2, 3, or 4 to 1, in the different species of property.” The vendor sold his land, intending with the purchase money to buy other fond in Alabama. Suppose he had done so, and the fond purchased had been as valuable as the land sold, as might well have been the case, he would then have lost ■ nothing by the sale, and the consideration would of course have been adequate. Suppose he had applied the purchase money, -at par, to the payment of a specie debt, as was often done; he would then have gotten what would have been equivalent to $10,000 in gold, for land Worth at most, according to his evidence, not more than *89 $6,000. There would have been in that case, certainly, no inadequacy of consideration. But suppose he did not lay his money out in land, or pay a specie debt with it, but kept it in his pocket till it perished; or invested it in a Confederate bond, which he kept until it perished; as was the case in hundreds of thousands of instances in the Confederate States. Can this subsequent use or non-use of the money effect the question of adequacy of consideration ? Can the purchaser be responsible for the application of the purchase money in such a case % But it is said the purchase money was not paid as it became due, but sometime afterwards, when Confederate money had depreciated in value after the maturity of the instalments. blow, certainly, the vendor might have refused to receive the money because it was not punctually paid; and a court of equity would not have compelled him, in that case, to convey the land. That the money was depreciating, made time of the essence of the contract. But, he had a right to receive the money when paid, and did receive it; and by so receiving it, he waived his right of objection, and the case then stood as if punctual payment had been made. It sometimes happened during the war that Confederate money was received at par in payment of a specie debt. That it should be received at par in payment of an over due Confederate debt, was more reasonable, and a more common occui’renee. It was the duty of the debtor to have paid his debt at maturity, unless he continued to hold the money by the consent, express or implied, of the creditor. The creditor might have left the money in the debtor’s hands, as he might have deposited it in bank, and drawn it out as he might find occasion to use it. Such instances, it is believed, were common during the war. There is no evidence of any demand made by the creditor of the debtor; or of any complaint made by the creditor to the debtor of any default of payment, or that the debtor had any idea that the creditor wanted the money faster than *90 he received it. But if the debtor was in default in this* respect, certainly that default was cured by the money received when it was paid without objection by the creditor. The receipts being given for so many.dollars on accoimf. 0f the money was of course received at par, that being the legal construction of the language used, and there being nothing in the receipts or elsewhere to show a contrary intention. A receipt for Confederate money on account of a specie debt, would be construed as a receipt for so much money at par, and the-debtor would be entitled to credit to that amount. ‘ A fortiori would this be the case in regard to a Confederate-debt. We must therefore consider this case as we would consider it if the payments had been duly made at maturity. And so considering it, I cannot conceive of any ground on which a suit by the vendee for specific execution of the contract after such payment and during the war could have been resisted.
If I be right in that, as I think I certainly am, does-it not inevitably follow, that the consideration must now be deemed adequate, and the court must now decree such specific execution ? Can the continued default of the vendor until after the war, in not executing a contract which he ought, and might have been compelled to have executed during the war, give him any advantage over the vendee's? Take away from the veudee the right he certainly had before, to have the contract executed ? If" so, upon what ground ? Can it be upon the ground of failure of consideration; of a change of circumstances rendering it inequitable to compel the complete execution of the contract ? There are cases in which a change of circumstances may render it improper for the court to enforce the execution of a contract. But those are cases, in which the plaintiff is in default, or in which the rights of third persons have supervened, and the defendant cannot with propriety, if at all, complete the execution of the contract. Where the plaintiff is not in default; has fully: *91 performed his part of the contract; and nothing remains. to be done hut for the vendor to convey the legal title which is still vested in him, and which he can convey; the court is hound to decree such conveyance. The land is the vendee’s, in equity; the vendor is his naked trustee, and a court of equity will compel him to convey the naked legal title to him-who has a right to demaud it. He has no equity to hold it against a vendee who has fully and duly performed his part of the contract. It is only in a case in which the defendant has an equity against the plaintiff, that the court can refuse to give relief to the latter, or impose terms upon him. Where there is no such equity, the plaintiff’s right to have the legal title conveyed to him is a matter of coui’se, and he is as much the owner of the land in equity before the conveyance, as he is at law after the conveyance. That the money paid for the land, which was a legal and adequate consideration when paid, has since perished, without the default of the vendee, certainly cannot give the vendor any equity to withhold the legal title, which he was bound and ought before to have conveyed. If bank notes he paid for land, and afterwards perish in the hands of the vendor by the failure of the bank, will he be entitled to relief on the ground of failure of consideration ? Certainly not: and where is the difference between that case and this ? If by the fall of the Confederacy the vendor in this case has lost the whole of the consideration money (and there is no evidence in the record that he has), hundreds of thousands of others have suffered from the same cause, and many of them to the extent of their entire fortunes. We deeply sympathize with such sufferers, and were, to some extent oui’selves common sufferers with them. But much as we deplore it, we cannot repair the loss by giving to one man the property of another, who may himself have been as great a sufferer from the same cause in some other way. If the present value of Confederate money is to be considered *92 in determining whether a consideration paid in it during the war was adequate, instead of the value at that time, then we must not only refuse to compel the specific performance of a contract founded on such consideration, W0 mngj; uu(j0 an(j get aside every executed contract or transaction which was founded on such consideration ; because, if there be any inadequacy at all on account of the present -value of Confederate money, which is utterly worthless, it must of necessity be so great as to shock the moral sense ; and that is a sufficient ground for setting aside an executed contract. The establishment of such a doctrine would produce incalculable evils in our' southern country, and make it almost a pandemonium.
Upon the whole, I am of opinion that there is no error in the decree, and that it ought to be affirmed.
Decree aeeirmed.